**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

**CRIMINAL NO. 3:05CR92**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MARK S. COX** | ) | **O R D E R** |
| | ) | |
| **And** | ) | |
| | ) | |
| **CAROL ANN COX,** | ) | |
| | ) | |
| **Third-Party Petitioner.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the motion of the Petitioner for

an award of attorneys' fees pursuant to 28 U.S.C. § 2412(d)(1)(A) which is

opposed by the Government.  For the reasons stated herein, the Court

finds an award is justified.

## I.  PROCEDURAL HISTORY

By decision entered May 23, 2006, the undersigned found the

Petitioner was entitled to relief from the preliminary order of forfeiture,

amended that order, and awarded the sum of $812,000 to the Petitioner to

be paid from the Defendant's BB&T bank account which he had agreed to forfeit to the Government. The undersigned found the Defendant had deposited the proceeds of the sale of his business interest and real estate into a Wachovia Bank account. The net proceeds were in the amount of $1,670,338.09. The Defendant subsequently transferred the proceeds into an account with BB&T. The Court also found that in the process of binding arbitration during the parties' divorce, the Petitioner gave value in exchange for the sum of $812,000 in the form of relinquishing her rights in the marital and divisible property awarded to the Defendant in the equitable distribution decision. The Petitioner promised the Defendant she would abide by the arbitrator's decision in exchange for and to induce an equivalent promise from the Defendant. As a result, the Petitioner had an expectation of receiving equivalent value for the value she provided the Defendant. The Court, therefore, found the transaction was an arms-length transaction and the Petitioner was reasonably without cause to believe the property was subject to forfeiture.

The Government appealed this decision but later moved to dismiss the appeal. The United States Fourth Circuit Court of Appeals dismissed the appeal on October 12, 2006.

## II. STANDARD OF REVIEW

The Equal Access to Justice Act (EAJA) provides that

a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs . . . incurred by that party *in any civil action* . . . including proceedings for judicial review of agency action, brought by . . . the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from [their] attorney . . . [.] The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

**28 U.S.C. § 2412(d) (emphasis added).**


## III. DISCUSSION

The first issue for resolution is whether EAJA applies to an ancillary forfeiture proceeding in a criminal case.

[The Court] begin[s] by considering the nature of the § 853(n) proceeding. Once a criminal forfeiture prosecution has been filed, third parties are expressly barred by 21 U.S.C. § 853(k)(2) from "commenc[ing] an action at law or equity against the United States concerning the validity of [their] alleged interest in the property, 'except' as provided in [§ 853(n)]." Congress therefore viewed a § 853(n) hearing as a species of an "action at law or equity" – a substitute for separate *civil* litigation against the government.

. . .

Failure to apply the EAJA to §853(n) proceedings would contravene Congress's desire to instill governmental accountability and to level the playing field in economic disputes between the government and its citizens. The United States generally can choose between civil and criminal forfeiture remedies, and consequently also choose the manner in which third parties must defend their property interests. The EAJA clearly applies to protect successful third-party intervenors in civil forfeiture proceedings. If the EAJA did not also apply to protect § 853(n) third-party petitioners, the government would have an obvious incentive to channel substantially unjustified forfeiture attempts into the criminal forfeiture "safe haven" in the hope that the amount at stake for each individual petitioner would be too small to make litigation worthwhile.

. . .

[L]itigation between an innocent third-party claimant and the government, ancillary to a criminal forfeiture proceeding, is a civil action within the purview of the EAJA.

**United States v. Douglas, 55 F.3d 584, 586-88 (11th Cir. 1995) (internal citations and footnotes omitted).** Contrary to the Government's position, the Fourth Circuit does not disagree with this view of an application of EAJA to criminal forfeiture proceedings. "Ancillary motions in a criminal

case are not necessarily criminal." ***United States v. Holland*, 214 F.3d 523, 526 (4th Cir. 2000).** "Instead, a proceeding that is basically civil should be considered a civil action even if it stems from a prior criminal prosecution. A proceeding is basically civil if it redresses private injuries; a criminal proceeding, by contrast, establishes guilt and punishes offenders." ***Id*. (internal citations omitted).** "It is for these reasons that courts have treated a third-party proceeding ancillary to a criminal forfeiture prosecution as a civil action under the EAJA." ***United States v. Wade*, 255 F.3d 833, 837 (D.C. Cir. 2001); *accord, United States v. Gilbert*, 244 F.3d 888 (11th Cir. 2001); United States v. Alcaraz-Garcia, 79 F.3d 769, 772-73 n.4 (9th Cir. 1996); *United States v. MacInnes*, 223 F. App'x 549, 551 (9th Cir. 2007) ("[A] third party petition to amend an order of criminal forfeiture [is] civil, and not criminal, in nature.").**

The Court rejects the Government's argument that the recent Fourth Circuit case of *O'Brien v. Moore,* 395 F.3d 499 (4th Cir. 2005), mandates a holding here that the United States has not waived its sovereign immunity in third-party claims in criminal forfeiture matters. *O'Brien* did not deal with forfeiture but with a *habeas* claim attacking the validity of the criminal conviction in an action brought by a prisoner, not an innocent third-party

seeking an adjudication of property rights. The Fourth Circuit held that "a *habeas corpus* proceeding is neither a wholly criminal nor a wholly civil action, but rather a hybrid action that is unique, a category unto itself." *Id. at 505.* "Thus, to the extent that a *habeas* proceeding reviews a criminal punishment with the potential of overturning it, the *habeas* proceeding necessarily assumes part of the underlying case's criminal nature in the same sense, for instance, that a declaratory judgment action takes on aspects of an underlying breach-of-contract case." *Id.*

> Thus, in enacting the EAJA and authorizing that an award of attorneys fees may be assessed against the United States in "civil actions," Congress did not expressly include habeas actions. More relevant to the analysis here, using the term "civil action" did not unequivocally or unambiguously include habeas actions, and perhaps for good reason. The EAJA's policy of leveling the playing field in civil litigation against the United States, particularly when the United States has taken a position that is not substantially justified, does not clearly apply to habeas litigation, which is pursued freely by petitioners without the need for the EAJA's incentives.

*Id.* **at 507 (internal citations omitted).** The Court finds that "a classic habeas action by a person in custody attacking the legality of that custody" is far different than a petition by an innocent third-party seeking to adjudicate property rights in a proceeding in which that third-party is prohibited from bringing a separate civil action. *Id.* **at 508 (quotation**

**omitted).** Thus, EAJA applies to third-party interventions in criminal forfeiture proceedings.

The Government does not dispute that the Petitioner was the prevailing party. The Court, therefore, moves to the issue of whether the Government was substantially justified in its position as it related to the Petitioner. It is the Government's burden to show that its position in this litigation was substantially justified. ***Scarborough v. Principi*, 541 U.S. 401, 403 (2004).** "For a position to be substantially justified, it must be 'more than merely undeserving of sanctions for frivolousness,' as it must be justified to a degree as to satisfy a reasonable person. In making such a determination, the district court should avoid an 'issue-by-issue analysis,' and instead should look at the 'totality of circumstances.'" ***Morgan v. Barnhart*, 2007 WL 840474, at \*1 (4th Cir. 2007) (quoting *Pierce v. Underwood*, 487 U.S. 552, 557-59, 565-66 (1988); *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 138-39 (4th Cir. 1993)).** "[I]f there is a genuine dispute . . . or if reasonable people could differ as to the appropriateness of the contested action," then the Government's position would be substantially justified. ***Pierce*, 487 U.S. at 565 (internal quotations and citations omitted).**

In order to resolve this issue, some findings from the prior decision and the record must be recited.  The Petitioner and the Defendant were married in 1989 and separated in January 2004.  In March 2004, they attempted to resolve the division of their marital estate through a Collaborative Law Agreement pursuant to which they agreed that if they were unsuccessful, they would submit to binding arbitration.  During that process, the Defendant's attorney in the marital matter wrote to the Petitioner's attorney asserting that some of the Defendant's assets might be subject to forfeiture because, "Dr. Mark Cox is currently the subject of a criminal investigation by the United States Attorney for the Western District of North Carolina . . . *relating to certain health care fraud allegations*." Throughout the letter, the attorney referred only to health care fraud allegations.  Throughout the marital litigation, the Defendant insisted he was actually innocent of any criminal wrongdoing, even going so far as to hire his own expert to so testify at the arbitration hearing in order to reassure the Petitioner that no assets in the marital distribution would be subject to forfeiture as a result of health care fraud.  **Stipulations for Ancillary Proceeding, filed March 27, 2006, ¶ 37.**  In fact, the Defendant had been under investigation for health care and bank fraud since 2002

and he became aware of the investigation in March 2003. **Affidavit of**

**Special Agent Tim Parker, dated April 15, 2005,** *attached to*

**Government's Response to Petitioner's Motion to Dismiss and (in the**

**alternative) Motion for Summary Judgment, filed May 26, 2005, at 4.**

The fraudulent conduct against Wachovia which resulted in this criminal

action began in May 2003.

Because the Defendant and the Petitioner were unsuccessful in their

marital negotiations, the parties went through arbitration and the arbitrator

issued his decision in February 2005. One of the marital assets identified

by the arbitrator was the Wachovia Money Market account from which the

arbitrator awarded the sum of $812,000 to the Petitioner. However, the

Defendant had previously transferred these funds from the Wachovia

account into a First Charter bank account in July 2004. The use of the

phrase "Wachovia Money Market account" in the arbitration award was

merely for identification purposes. Therefore, as of February 2005, the

Petitioner owned $812,000 which originated in the Wachovia account but

had been transferred into the First Charter account. On March 8 and 9,

2005, after the arbitration award and without the Petitioner's knowledge,

the Defendant transferred $1,064,679.50 from the First Charter bank

account into the BB&T bank account.  **Stipulations,** ***supra***, **¶ 27.**  This sum included the money which belonged to the Petitioner.  This transfer violated an injunction which had been issued by the arbitrator in the state marital litigation.  ***Id.* ¶ 36.**

In January 2005, the FBI was provided with the Defendant's deposition transcript from the arbitration.  **Government's Response to Petitioner's Application for Fees and Expenses, filed December 8, 2006, at 4.**  On January 25, 2005, the Petitioner was interviewed by the FBI about her knowledge of the Defendant's business.  **Stipulations,** ***supra***, **¶ 38.**  She was told that the Defendant was under investigation but that nothing more could be told to her.  ***Id.***  In response to a subpoena, the Petitioner provided the FBI in March 2005 with discovery from the arbitration.  ***Id.***

On April 8, 2005, the Defendant entered into a sealed plea agreement with the Government pursuant to which he admitted that between May 1, 2003, and November 1, 2003, he committed bank fraud and that the proceeds of that fraud ultimately ended up in the BB&T bank account identified in the plea agreement, the same bank account into which he had transferred the Petitioner's award from the arbitration without

her knowledge. The Defendant agreed in the plea agreement to forfeit those funds as the proceeds of bank fraud.

Thus, the Defendant transferred funds owned by the Petitioner into the bank account he specified in his plea agreement as being forfeitable. By so doing, the Defendant attempted to use the Petitioner's money to satisfy the forfeiture "debt" to which he had agreed in his plea agreement. The Government could have insisted on different assets for forfeiture but did not do so. Meanwhile, the Petitioner was completely unaware of the charges against the Defendant, the fact that he had entered into a plea agreement with the Government, or the fact that the Defendant had transferred money owned by her out of the First Charter account into the "forfeiture" account at BB&T.[1] On April 11, 2005, a sealed preliminary order of forfeiture of the BB&T account was filed. The Petitioner, of course, was unaware of that order.

It is not disputed that the Defendant had other assets as to which the Government could have sought forfeiture. The Government had been

---

[1] In view of the extensive investigation into the Defendant's bank accounts, including the tracing of monetary transactions being conducted throughout this time period, it is not at all clear that the Government was ignorant of the fact that the Defendant made this transfer at the time thereof or shortly thereafter.

investigating the Defendant since 2002 and had traced the flow of proceeds from health care and bank fraud into various bank accounts and properties.  **Parker Affidavit,** *supra***; Affidavit of Special Agent Cathleen Whiteman, filed April 11, 2006.**  And, the Government has admitted that "[i]t is now clear that defendant was attempting to satisfy the government's forfeiture claim with funds that might otherwise go to petitioner."

**Government's Response to Petitioner's Application for Fees and Expenses,** *supra***, at n.3.**  The Government has also admitted that in January 2005, agents investigating the Defendant knew that he had proceeds on deposit in both the Wachovia and First Charter accounts; indeed, they had traced the Defendant's use of such proceeds during their investigation.  *Id.* **at 4.**  Yet, the Government made no disclosure to the Petitioner or her attorney of the investigation of bank fraud, the impending charges, or the negotiations which were underway in March 2005, at the latest, which led to the plea agreement and forfeiture agreement in April 2005.  In fact, the Government has admitted that the Petitioner was completely unaware that the Defendant was being investigated or charged with bank fraud violations.  ***United States v. Undetermined Quantities of an Article of Device***, **797 F. Supp. 861 (D. Colo. 1992) (Government**

**conceded lack of culpable conduct.).** In view of the Government's conduct, the Government's position now that Petitioner was aware or should have been aware of the Defendant's criminal conduct and, thus, the possibility of forfeiture, is not substantially justified.

Moreover, the Government was aware of the arbitration award of $812,000 to the Petitioner, an amount which originated in the Wachovia account. It must have been aware, and most certainly should have been aware, that the arbitrator in that matter had enjoined the transfer of any funds. Indeed, the Government has admitted that "[p]rior to entry of the preliminary order of forfeiture, the government was aware that the parties were in arbitration and that the assets were subject to division and distribution as a result of that procedure." **Stipulations,** *supra***, ¶ 45.** And, the Petitioner herself, through counsel, provided the Government with discovery from that arbitration proceeding.

The Court cannot escape the conclusion that the Government acted in the manner most expedient for itself and with reckless disregard to the fact that a known criminal might usurp the Petitioner's money to pay the Government. Indeed, the Government stood silently by and allowed the Defendant to "dupe" the Petitioner and then claimed the money for itself

when it could have easily forfeited other assets.  For years the Government

had investigated the Defendant and traced the proceeds of his fraudulent

conduct into numerous properties.  ***E.E.O.C. v. Clay Printing Co.*, 13**

**F.3d 813, 815 (4th Cir. 1994) ("It is also significant that EEOC did not**

**fail for lack of trying; the Commission investigated for two and a half**

**years before the action was filed, and the parties conducted ten**

**months of discovery before the summary judgment was rendered.").**

Any one or more of these properties could have been the subject of

forfeiture.  Yet, the Government turned a blind eye to the fact that the

Defendant violated a state injunction by transferring funds belonging to the

Petitioner into an account which he agreed to forfeit to the Government.

By entering into the plea agreement pursuant to which the Government

would end up with a bank account into which those funds were transferred

in violation of the state injunction, the Government implicitly became

culpable in that conduct.  The fact that the Government then litigated the

matter to the extent of a full blown civil action, received an adverse

decision, filed an appeal and then dismissed the appeal causes the Court

great concern.  ***See, e.g., Keasler v. United States*, 585 F. Supp. 825,**

**841 (D. Ark. 1984), *aff'd*, 766 F.2d 1227 (8th Cir. 1985) (Government's**

**position not substantially justified where it voluntarily dismissed appeal without any sort of concession or partial settlement from the plaintiff. "Nothing favorable to the Government's position resulted from the appeal."); _United States v. Marolf_, 277 F.3d 1156 (9th Cir. 2002) (The court must consider the totality of circumstances present before and during litigation.); _United States v. $12,248 United States Currency_, 957 F.2d 1513 (9th Cir. 1991) (Probable cause for the initial seizure of property does not automatically equate with substantial justification in the pursuit of a forfeiture proceeding.); _United States v. Rose_, 563 F. Supp. 283 (S.D.N.Y. 1983) (Dismissal of claim after prolonged investigation and administrative action warranted finding that the government's position was not substantially justified.).** The dismissal of an appeal after such contentious litigation is indicative of the strength of the Government's position on appeal. **_Davidson v. Veneman_, 317 F.3d 503, 506 (5th Cir. 2003) ("[The government] must show, based on the record[,] that it acted reasonably at all stages of the litigation.").** The resources spent in attempting to take from the Petitioner that which was rightfully hers under state law could easily have been used to find other assets of the Defendant. Indeed, the Government already

knew about those assets; forfeiture thereof instead of the Petitioner's award would have resulted in enormous judicial and prosecutorial economy.

"The burden of establishing 'that the position of the United States was substantially justified,' . . . must be shouldered by the Government." **Scarborough, 541 U.S. at 414 (quoting 28 U.S.C. § 2412(d)(1)(A)).** Obviously, in this case, the undersigned rejected the Government's position, but that alone is insufficient to show that its position was not substantially justified. **United States S.E.C. v. Zahareas, 374 F.3d 624, 626-27 (8th Cir. 2004).** "Rather, '[t]he most powerful indicator of the reasonableness of an ultimately rejected position is a decision on the merits and the rationale which supports that decision.'" **Id. at 627 (quoting Friends of Boundary Waters Wilderness v. Thomas, 53 F.3d 881, 885 (8th Cir. 1995)); accord, United States v. Paisley, 957 F.2d 1161, 1167 (4th Cir. 1992).** "Moreover, the government must show 'that it acted reasonably at all stages of the litigation.'" **Zahareas, supra, at 627 (quoting Davidson, supra, at 507).**

The Government argues that its position was substantially justified for three reasons: (1) the division of property in a divorce proceeding is not

viewed as an arms' length transaction; (2) the Petitioner had notice of the potential forfeitability "of the defendant's property;" and (3) the reasonableness of the Petitioner's belief that the property was not subject to forfeiture is subject to an objective test.  In other words, the Government argues that its position, that the Petitioner was not a bona fide purchaser for value without knowledge of the forfeitability of the Defendant's assets, was substantially justified.

Although not dispositive, it is first noted that the property at issue was not solely the Defendant's property.  ***Pacheco v. Serendensky*, 393 F.3d 348 (2d Cir. 2004) (criminal forfeiture statute permits partial forfeitures); *United States v. McHan*, 345 F.3d 262, 279 (4th Cir. 2003) ("[T]he government has not sought to forfeit the properties themselves, . . . but rather only the interests retained by Charles Sr. in the proceeds from the sale of these properties, i.e., his joint ownership in the deeds of trust.").**  "Despite [the Defendant's] representation to the government that he owned both [bank accounts], his assertion of ownership in a plea agreement does not establish legal or equitable title[.]"  ***United States v. Nava*, 404 F.3d 1119, 1133 (9th Cir. 2005).**  The Defendant's "plea bargain representation cannot *establish* his

ownership. '[A] defendant's consent to forfeit property does not expand the Court's power over that property, if the property is not the defendant's own,' for the obvious reason that he cannot agree to forfeit property that belongs to someone else." ***Id.* (quoting *United States v. Schwimmer*, 968 F.2d 1570, 1580-81 (2d Cir. 1992)).**

Second, the Government has admitted that at no time was the Petitioner on notice that the Defendant was under investigation for bank fraud. The only possible criminal conduct ever disclosed was health care fraud; but, the Defendant persisted in proclaiming his innocence, even to the point of hiring an expert for the arbitration. "[T]he proper test to be applied under the statute is not merely whether the petitioner had knowledge of the forfeitability of the asset but whether the petitioner reasonably held the belief that the property was not subject to forfeiture." ***United States v. Reckmeyer*, 836 F.2d 200, 204 (4th Cir. 1987).** Here, the Defendant repeatedly assured the Petitioner he was innocent of wrong doing and his assets were thus safe.[2] He went so far as to hire an expert

---

[2] The Government has made much of the letter from the Defendant's marital counsel describing the consequences of forfeiture. This overlooks the fact that the only investigation ever revealed by the Defendant involved health care fraud, not bank fraud. And, the Defendant persistently proclaimed his innocence.

to so attest.  Nor is the Government without fault; it pursued a lengthy bank fraud investigation which was never disclosed to the Petitioner.  Based on the totality of the circumstances in this case,  the Court finds the holding in *Reckmeyer* controlled at the time the Government determined to proceed with the forfeiture; that is, "[a] reasonable person with the knowledge the government attributed to [the Petitioner] would not necessarily conclude that all property owned by [the Defendant] was forfeitable."  ***Id.*, at 204-05.**

The Government, however, claims it was substantially justified in pursuing the account because the law was unsettled as to whether the Petitioner could be deemed a bona fide purchaser for value.  The Court agrees with the Petitioner that the *Reckmeyer* case also resolved that issue.  Indeed, the Government acknowledges that in *Reckmeyer,* the Fourth Circuit concluded that "in order to effectuate legislative intent the term 'bona fide purchaser for value' must be construed liberally to include all persons who give value to the defendant in an arms'-length transaction with the expectation that they would receive equivalent value in return." **Response, supra, at 13 (quoting *Reckmeyer*, at 208).**  The Fourth Circuit has recently reiterated this definition and its liberal construction.  ***In re Bryson*, 406 F.3d 284, 291 (4ᵗʰ Cir. 2005) ("We recognize that 'the**

**term 'bona fide purchaser for value' must be construed liberally to include all persons who give value to the defendant in an arms'-length transaction with the expectation that they would receive equivalent value in return.'") (quoting *Reckmeyer, supra*).**

Nor does the Court agree with the Government's assessment that this presented a "novel" issue and thus, it was substantially justified. ***Zahareas*, 374 F.3d at 627 ("Still, the mere fact that the government advances a novel argument does not automatically insulate it from EAJA liability.").** This word appeared in the previous decision of the undersigned but was not intended to make the inference taken by the Government. In view of the *Reckmeyer* decision, the Court finds the Government's position was not substantially justified. This finding is supported by the totality of the circumstances, not the least of which is the dismissal by the Government of its appeal from this decision. If the Government had so little faith in its position that it was not willing to pursue the appeal, the Court can only conclude that its original position was unjustified. Moreover, after the Petitioner filed her claim in this matter, the Government either was aware or should have been aware of the following: (1) the Defendant had violated the injunction imposed in the state matter;

(2) the Government was receiving proceeds as a result of the violation; (3) the Defendant had attempted to defeat his ex-wife of her legitimate and valid judgment in the divorce action; and (4) the Government, with full knowledge that he had done so, nonetheless pursued this forfeiture at the expense of an innocent third-party who had no knowledge that the Defendant and Government were even in negotiations regarding Defendant's criminal conduct.  Forfeiture proceedings may be a heavy-handed method for the Government to recoup the proceeds of criminal conduct, but the Government should not extend that heavy hand to third-parties who are innocent and deprived of their legitimate property rights. District courts must "heed[ ] the Supreme Court's recent admonition that '[i]mproperly used, forfeiture could become more like a roulette wheel employed to raise revenues from innocent but hapless owners . . ., or a tool wielded to punish those who associate with criminals, [rather] than a component of a system of justice.'" **Nava, 404 F.3d at 1136 (quoting Bennis v. Michigan, 516 U.S. 442, 456 (1996)) (other quotations omitted).**  When the Government does so with full knowledge that an innocent, unaware third-party is being subjected to the proceeding and when other assets are available to forfeit, the Court cannot escape the

conclusion that the Government's position was not substantially justified.[3]

***Taylor v. United States*, 815 F.2d 249, 254 (3d Cir. 1987) ("[L]audatory motives are not a defense to an EAJA claim.").**

In the Petitioner's motion, she has attached a statement of net worth and an affidavit for attorneys' fees, costs and other expenses. The Government did not respond to the issue of the amount of such fees or the reasonableness thereof. "Once the district court determines that plaintiffs have met the threshold conditions for an award of fees and costs under the EAJA, the district court must undertake the 'task of determining what fee is reasonable.'" ***Hyatt v. Barnhart*, 315 F.3d 239, 253 (4th Cir. 2002) (quoting *INS v. Jean*, 496 U.S. 154, 161 (1990)).** "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." ***Id.* (quotations omitted).** The Court will provide the parties an opportunity to do so. They are admonished, however, to make a good faith effort to resolve this issue.

---

[3] The Court rejects the Government's alternative argument that special circumstances make an EAJA award unjust.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that the Petitioner's motion for an award of attorneys' fees, costs and expenses is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the parties shall make a good faith effort to settle the issue of the amount of a reasonable award and shall report to the Court on or before 30 days from entry of this Order.  The report shall be merely in the form of a report without disclosing any negotiations.

Signed: July 20, 2007

Lacy H. Thornburg
United States District Judge