IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05CR92

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MARK COX | ) | |

THIS MATTER is before the Court on Carol Ann Cox's "Petition to Commence Ancillary Proceedings" regarding the ownership of funds seized by the Government pursuant to its Writ of Execution issued November 9, 2007. (Document #112)

For the reasons set forth below, Ms. Cox is not entitled to any sort of ancillary proceeding nor to the other requests for relief listed in her petition, including payment of funds to her, and there is no applicable authority for the Court to tax the costs of the action against the Government. Her petition, therefore, is DENIED.

I. BACKGROUND

Ms. Cox's petition concerns on the Writ of Execution issued on November 9, 2007, and rather than reciting the entirety of the facts of this case, the Court will focus only on the facts surrounding the issuance of that Writ of Execution.

The criminal judgment against Defendant Mark Cox was entered on July 17, 2007. The terms of the judgment provided that Defendant was obligated to pay a criminal assessment of $300.00, a fine of $50,000.00, and criminal restitution to the United States on behalf of his victims in the amount of $1,782,977.91. After entry of the judgment, the United States attempted

1

to obtain voluntary disclosures from Defendant regarding his assets to determine his current and future ability to pay money toward these outstanding obligations. When those repeated efforts failed to obtain the requested disclosures (which have yet to be satisfied), the United States proceeded with its ordinary collection investigation and activities.

Thereafter the Government learned that Defendant had substantial assets in bank accounts at Branch Banking & Trust Co. ("BB&T") that were subject to collection by the United States. The United States issued a Writ of Execution pursuant to the Federal Debt Collection Procedures Act of 1990 ("FDCPA", 28 U.S.C. § 3001 *et seq.*), which permits the United States, as a judgment creditor, to levy upon all property in which the judgment debtor has a substantial interest. 28 U.S.C. § 3203(a). The Application for Writ requested the levy against accounts held in the name of Mark Scott Cox and/or Mark Cox at BB&T. The Government filed for and received its Writ of Execution with regard to the BB&T accounts on November 9, 2007. BB&T confirmed the same day its receipt and acknowledgment of the Writ, verified the funds subject to the Writ, and verified that the bank would remit the funds to the Government the following week in accordance with its internal controls and policies. The Government thus obtained possession and control of the subject funds on November 9, 2007. Thereafter BB&T produced to the United States an official check in the amount of $414,268.86, made payable as requested to the United States Clerk of Court. The funds were deposited into an interest-bearing account with the Court Registry pursuant to the Government's motion and the Court's Order granting same, dated November 16, 2007.

At no time did the Government request that funds held in the name of Carol Ann Cox be levied upon. In fact, BB&T personnel informed the undersigned that just an hour or so before receipt of the Government's Writ of Execution, Defendant wired $42,000.00 to an account at Bank of America in the name of Carol Ann Cox (funds assumed to have satisfied a state court contempt order for the same amount referenced in Ms. Cox's Petition at ¶10). The Government's levy did not

reach those funds and the Government has made no request to recover those funds.

**II. DISCUSSION**

The statutes that govern these sorts of collection activities are found in the Federal Debt Collection Procedures Act of 1990 ("FDCPA," 28 U.S.C. §3001 *et seq.*), which ". . . provides the exclusive civil procedures for the United States to recover a judgment on a debt . . ." 28 U.S.C. § 3001(a)(1).

Rule 69 of the Federal Rules of Civil Procedure provides that the laws of North Carolina regarding writs of execution, to the extent they do not conflict with the FDCPA, govern the process of judgment enforcement:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

Rule 69(a)(1) Fed. R. Civ. Pro.

In her Petition, Ms. Cox asks for the Court to take three actions:

1) that the Court initiate ancillary proceedings to determine Petitioner's ownership interest in BB&T account number 0005292387166 which the United States of America executed and levied on November 9, 2007;

2) that the Court enter an order returning the funds seized from BB&T account number 0005292387166 to Petitioner;

3) that the Court enter an order by the terms of which $140,000.00 of the funds obtained by the United States of America through the Writ of Execution of November 9, 2007 be placed in trust with the Clerk of Superior Court for Mecklenburg County, North Carolina pending an order by The Honorable Ben S. Thalheimer.

This Court will address the first request separately from the following two requests.

### A. Initiation of Ancillary Proceedings

Ms. Cox is not entitled to an ancillary hearing pursuant to either the FDCPA or North Carolina law. She may, however, dispute ownership of the asset at issue, which she has done, and which the Court addresses in the next section. *See United States v. Coluccio*, 842 F.Supp. 663, 665 (E.D.N.Y. 1994), *rev'd on other grounds*, 51 F.3d 337 (2nd Cir. 1995) (addressing challenge to writ of execution where ownership of the property was disputed). Ancillary proceedings are appropriate in certain instances with regard to ownership claims in asset forfeiture proceedings, but are not authorized with regard to judgment collection actions.

Since Ms. Cox is not entitled to her requested ancillary hearing under either the FDCPA or North Carolina Law, her motion is hereby DENIED.

### B. Returning funds seized and placing $140,000 in a trust

When the criminal judgment was entered against Mr. Cox, the United States became a judgment creditor. That interest was perfected by the Government on November 9, 2007. Ms. Cox, however, failed to perfect her interest, and therefore, has no claim to the money in Defendant's account.

The FDCPA itself does not speak to the priority of claimants, so North Carolina law should govern. The North Carolina Uniform Commercial Code provides that the only way to perfect an interest in money is through possession. "A security interest in money may be perfected only be the secured party's taking possession under G.S. 25-9-313." N.C. GEN. STAT. § 25-9-312(b)(3). This is the same as the Model Uniform Commercial Code Article 9 language, which requires possession because money is fully negotiable by its very nature. The comments to Article 9-312 explain that this negotiability would be seriously impaired if a secured party could leave money with the debtor, perfect an interest

by filing a financing statement or by other means, and gain priority over subsequent transferees. As between competing priorities, the rule is that the first in time is the first in priority. N.C.Gen.Stat. § 25-9-322. In this case, the United States perfected its interest on November 9, 2007. Any possessory interest obtained by another creditor after that date is subject to the rights of the United States.

In her petition, Ms. Cox requested that the Court order the turnover of $238,000 of the $414,000+ collected by the Government. The basis for her request is (1) that she claims $92,000.00, plus accrued interest, related to an account that was awarded to her in the state divorce/support action but that was never transferred to her (Petition ¶¶ 2-6) (and which was subsequently transferred by Defendant to BB&T), and (2) a claim for future child support and alimony of $140,000.00 for the time Defendant will be incarcerated (Petition ¶¶ 9-10).

However, Ms. Cox cannot meet the burden of showing the Court that she is the owner of the $238,000 she has requested be transferred to her and/or the state clerk of court. First, as to the $92,000.00 claim for an account awarded her in the domestic litigation, she failed to perfect her interest through possession.

Although Ms. Cox is a judgment creditor to the extent the state court domestic judgment entered in her favor has not been satisfied by Defendant, the judgment itself was not sufficient to perfect her interest in the funds at issue. Ms. Cox acted at her own peril when she failed to execute on the account or to otherwise take possession of the funds held by Defendant for a period of more than two years. Had another creditor executed on the funds in the intervening years since the entry of the state court judgment, Ms. Cox would have no recourse against that creditor. It is no different simply because the Government is the creditor who first perfected its interest in Defendant's assets.

With regard to the additional $140,000.00 referenced in her Petition, Ms. Cox goes even

5

further than asking for funds to satisfy an old judgment - she is requesting funds for future child support and alimony because the judgment currently in place does not require the pre-payment of those funds for the period of time Defendant will be incarcerated. Her Petition requests that this Court take properly perfected funds from a valid judgment creditor and deposit them with the state clerk of court so that if the domestic court judge rules in her favor on a motion currently pending regarding future alimony and child support, there will be funds with which to satisfy his ruling. The basis of this request is not even a valid judgment, but Ms. Cox's assertion that ". . . upon information and belief, Judge Thalheimer intended to use some of Defendant's liquid funds . . . to provide child support and alimony for Petition during the time Defendant is incarcerated." Petition ¶10.

The domestic court judge cannot order the turnover of funds or assets Defendant does not possess because he has no authority to unwind legal transfers of assets. Nor does this Court have the authority to assist that effort by preferring one judgment creditor over the other, absent statutory authority.

Since the applicable statutory authority provides that the United States is the only properly perfected creditor with regard to the $414,268.86, Ms. Cox has no claim to those funds.

In addition, absent express congressional consent, sovereign immunity prevents courts from awarding attorneys' fees and/or expenses against the United States. *See generally* Fed.R.Civ.Pro. 54(d), *U.S. v. Chemical Foundation, Inc.*, 272 U.S. 1, 20 (1926), *U.S. v. Worley*, 281 U.S. 339, 344 (1930), *and Walling v. Norfolk Southern Ry. Co.*, 162 F.2d 95, 96 (4th Cir. 1947). There is no requisite congressional consent to the taxation of costs in the FDCPA or other statute applicable to these proceedings.

### III CONCLUSION

The applicable statutory authority provides that the United States is the only properly perfected creditor with regard to the $414,268.86 seized by the United States pursuant to a properly issued Writ of Execution. Therefore, Ms. Cox's claims to those fund are DENIED.

Further, Ms. Cox's motion for commencement of an ancillary proceeding and for the award of costs in these proceedings are also DENIED.

IT IS SO ORDERED

Signed: June 10, 2008

Graham C. Mullen
United States District Judge